James R. McKINNEY

v.

STATE.

No. 2002–197–C.A.

Supreme Court of Rhode Island.

Feb. 4, 2004.

Joan Huffman (Non–RI), for Plaintiff.

Aaron L. Weisman, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

WILLIAMS, Chief Justice.

The applicant, James R. McKinney (McKinney), pled *nolo contendere* to six counts stemming from an armed robbery during which he fired shots at a security guard and an off-duty police officer. At his sentencing, McKinney agreed to serve forty years of a sixty-year sentence. This appeal concerns McKinney's subsequent application for post-conviction relief, filed pursuant to G.L.1956 § 10–9.1–1. McKinney asked the Superior Court to deem his sentence unconstitutional after he consented to it. The Superior Court hearing justice (hearing justice) found McKinney's arguments to be persuasive and reduced his sentence. For the reasons stated below,

we reverse the judgment and reinstate the agreed-upon sentence.

## I

### Facts and Travel

In the early morning of January 13, 1994, McKinney robbed the front office of a Comfort Inn (hotel) in the City of Pawtucket. McKinney directed the clerk, at gunpoint, to clean out the cash register then demanded that he open the safe. While the clerk was explaining that he could not open the safe he heard the hotel's security guard and his friend returning from rounds. McKinney ran out of the office, yelling at the guard and his friend to "get back," which they did. McKinney fled to the parking lot as the guard began chasing him. Realizing that he was being chased, McKinney turned around and fired a shot at the guard, but, fortunately, missed.

Meanwhile, two off-duty Providence police officers who had been dining at a restaurant inside the hotel heard the commotion and joined the chase. As McKinney approached the getaway car, he turned and fired shots at one of the off-duty police officers, again missing. The guard and the officers jumped into their vehicles and began to follow McKinney as he drove away, but they lost him as he merged onto the highway toward Providence.

The police officers were able to run the plates on McKinney's Jeep and found that it was registered to McKinney's girlfriend, Thannatta Littlejohn (Littlejohn). The police then went to Littlejohn's home. She told the officers where they could find McKinney. The officers promptly arrested McKinney.

In 1994 McKinney pled *nolo contendere* to six counts relating to his crime: one count of first-degree robbery in violation of G.L.1956 § 11–39–1; one count of assault with intent to commit robbery in violation of G.L.1956 § 11–5–1; three counts of felony assault with a dangerous weapon in violation of § 11–5–2; and one count of possession of arms by a person convicted of a crime of violence in violation of G.L.1956 § 11–47–5. The state and McKinney negotiated a plea agreement in which McKinney would serve twenty years of a forty-year sentence in exchange for the state's agreeing not to seek habitual offender status at sentencing.[1] At McKinney's sentencing, the Superior Court justice (sentencing justice) rejected the sentence agreed to by the parties and, instead, offered McKinney a sentence of sixty years, forty to serve, which McKinney accepted. Shortly thereafter, McKinney filed a pro se motion to reduce his sentence pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure. The sentencing justice denied McKinney's motion, finding that his crimes were "vicious" and "well-concocted." McKinney then appealed to this Court and we affirmed his sentence. *State v. McKinney,* 705 A.2d 1379 (R.I. 1997) (mem.).

McKinney then filed the instant application for post-conviction relief pursuant to § 10–9.1–1, alleging that the sentence violates the Eighth Amendment to the United States Constitution and article 1, section 8, of the Rhode Island Constitution. The hearing justice agreed with McKinney, finding it was "a manifestly excessive sentence * * * which constitutes, in effect, cruel and unusual punishment. * * *."

---

1. If found to be a habitual offender, McKinney faced an additional mandatory sentence of up to twenty-five years consecutive to the sentence imposed as a result of this indictment. G.L.1956 § 12–19–21.

The hearing justice reduced McKinney's sentence to twenty-five years to serve. The state timely appealed. We hold that the hearing justice erred in reducing McKinney's sentence.

## II

### Application for Post–Conviction Relief

 McKinney applied for post-conviction relief pursuant to § 10–9.1–1(a), which says that "[a]ny person who has been convicted of, or sentenced for, a crime * * * who claims * * * (1)[t]hat the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state * * * may institute * * * a proceeding under this chapter to secure relief." In reviewing an application for post-conviction relief, "[w]e will not disturb a trial justice's findings * * * absent clear error or a showing that the trial justice overlooked or misconceived material evidence." *Bleau v. Wall*, 808 A.2d 637, 641 (R.I.2002) (quoting *State v. Thomas*, 794 A.2d 990, 993 (R.I.2002)). This Court, however, reviews constitutional questions *de novo*, "giving deference to the lower court's findings of historical fact." *State v. Thornton*, 800 A.2d 1016, 1026 (R.I.2002).

McKinney correctly asserts that the test to determine whether a sentence is "manifestly excessive" under Rule 35 is different from the test for whether a sentence violates the United States or Rhode Island Constitutions.[2] Because this Court already has determined that McKinney's sentence is not "manifestly excessive," the only issue before the hearing justice, and

consequently this Court, is whether McKinney's sentence is unconstitutional.

McKinney's constitutional arguments are founded on the Eighth Amendment to the United States Constitution and article 1, section 8, of the Rhode Island Constitution. We begin our analysis by setting forth the relevant tests. As we discuss, the tests under both constitutions are identical. Based on our review, we hold that defendant's sentence is not unconstitutional because it is commensurate with the crimes he committed.

### A

### Eighth Amendment to the United States Constitution

In determining the standards against which McKinney's sentence must be measured, we are forced to wade through a morass of United States Supreme Court Eighth Amendment decisions. Unfortunately, these decisions can be described as divergent at best and outright contradictory at worst. Indeed, as Justice O'Connor described, "[i]n most situations, the task of determining what we have clearly established [would] be straightforward. The difficulty * * * however, is that our precedents in this area have not been the model of clarity." *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S.Ct. 1166, 155 L.Ed.2d 144, 155 (2003). Donning our compass and machete, we venture into the thicket of those precedents with the purpose of extracting a workable test.

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *Coker v. Geor-*

---

2. Before addressing whether McKinney's sentence is unconstitutional, we note that *res judicata* may have barred the decision on its merits. *See Taylor v. Wall*, 821 A.2d 685, 688 (R.I.2003) (finding that *res judicata* applies to petitions for post-conviction relief, thus "bar[ring] the relitigation of any issue that could have been litigated in a prior proceeding"). The state, however, failed to raise the issue below so we will address the merits of McKinney's argument.

*gia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), the United States Supreme Court held that a death sentence was grossly disproportionate to the crime of raping an adult woman and, thus, violated the Eighth Amendment. The Court concluded that "a punishment is 'excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Id.* The proportionality principle was extended to noncapital sentences in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). Relying on *Coker* and *Rummel,* McKinney argues that his sentence is unconstitutional because it is "grossly disproportionate" when compared with the severity of the crime.

In *Solem v. Helm,* 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court held that "a court's proportionality analysis under the Eighth Amendment should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."

The three-part *Solem* test was severely weakened in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), a plurality opinion. Unlike the defendant in *Solem,* who was sentenced to life without the possibility of parole for a seventh nonviolent felony, *Solem,* 463 U.S. at 279, 103 S.Ct. 3001, the defendant in *Harmelin* was a first-time felon sentenced to life in prison without the possibility of parole for possessing 672 grams of cocaine. *Harmelin,* 501 U.S. at 961, 994, 111 S.Ct. 2680. In *Harmelin,* Justice Scalia, joined

by Chief Justice Rehnquist declared that "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Id.* at 965, 111 S.Ct. 2680. Justice Kennedy, joined by Justices O'Connor and Souter, concurred in the judgment but, rather than entirely disposing of any proportionality guarantee under the Eighth Amendment, they adopted a "narrow proportionality principle." *Id.* at 997, 111 S.Ct. 2680.

After distilling a number of cases on the subject, Justice Kennedy noted five common principles "that give content to the uses and limits of proportionality review." *Harmelin,* 501 U.S. at 998, 111 S.Ct. 2680. First, "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" *Id.* (quoting *Rummel,* 445 U.S. at 275–76, 100 S.Ct. 1133). Second, "the Eighth Amendment does not mandate adoption of any one penological theory," but allows courts to accord "different weights at different times to the penological goals of retribution, deterrence, incapacitation, and rehabilitation." *Id.* at 999, 111 S.Ct. 2680. Third, the nature of the federal judicial structure inevitably leads to different sentencing schemes in different states. Therefore, "the circumstance that a State has the most severe punishment for a particular crime does not by itself render the punishment grossly disproportionate." *Id.* at 1000, 111 S.Ct. 2680. Fourth, review by federal courts "should be informed by 'objective factors to the maximum possible extent.'" *Id.* (quoting *Rummel,* 445 U.S. at 274–75, 100 S.Ct. 1133). The first four principles, then, "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S.Ct.

2680 (quoting *Solem*, 463 U.S. at 288, 303, 103 S.Ct. 3001).

Justice Kennedy concluded that "*Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review." *Harmelin*, 501 U.S. at 1004–05, 111 S.Ct. 2680. So concluding, he noted that "[a] better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 1005, 111 S.Ct. 2680.

The United States Supreme Court's most recent discussions of its Eighth Amendment jurisprudence are set forth in *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) and *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). In *Ewing*, the Court reviewed a sentence of twenty-five years to life imposed on a third-time offender convicted of stealing golf clubs worth nearly $1,200. *Ewing*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 115–16. Giving credence to Justice Kennedy's concurrence in *Harmelin*, Justice O'Connor, speaking for the Court in a plurality opinion, applied the "narrow proportionality principle" set forth in Justice Kennedy's concurrence in *Harmelin*. *Ewing*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 119. The Court noted that "[t]he proportionality principles in our cases distilled in Justice Kennedy's concurrence guide our application of the Eighth Amendment in the new context that we are called upon to consider." *Id.* Specifically, the question in

*Ewing* was whether the defendant's sentence, which was based on California's three-strikes law, was grossly disproportionate to his crime. Justice O'Connor concluded that although the Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to noncapital sentences,'" it does not require a comparative analysis of sentences "within and between jurisdictions." *Id.* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 117, 119 (quoting the concurrence in *Harmelin*, 501 U.S. at 997, 1004–05, 111 S.Ct. 2680).

The Court in *Ewing* relied on the principles enunciated by Justice Kennedy in *Harmelin* to aid in its proportionality review. *Id.* The Court analyzed the California Legislature's intent in adopting the three-strikes law, whether the crime was violent or nonviolent, the California Legislature's intent in classifying the crime as a felony or misdemeanor,[3] Ewing's criminal history, and the state's public safety interest in incapacitating recidivists. *Id.* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 119, 122–23. Based on these considerations, it was held that Ewing's sentence "[was] not grossly disproportionate and therefore does not violate the Eighth Amendment [ ] * * *." *Id.* 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 123.

The United States Supreme Court was faced with another Eighth Amendment challenge to California's three-strike law in *Lockyer*. In *Lockyer*, the Court considered whether the California Appellate Court's failure to apply *Solem* to the defendant's Eighth Amendment argument was an "unreasonable application of clearly established Supreme Court law." *Lock-*

---

**3.** The crime Ewing committed is considered a "wobbler" in California so the prosecution has the option to charge the crime as a felony or a misdemeanor. *Ewing v. California*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d 108, 116 (2003). For discussion on "wobblers" see *id.*

538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 114. In Ewing's case the prosecutor charged his robbery as a felon, making him susceptible to the three-strikes law at issue in the case.

*yer*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d at 154 (quoting *Andrade v. Attorney Gen. of State of Cal.*, 270 F.3d 743, 766–67 (9th Cir.2001)). Acknowledging the difficulty in discerning and applying Supreme Court law with respect to the Eighth Amendment, the Court stated "[t]hrough this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' * * *: A gross disproportionality principle is applicable to sentences for terms of years." *Id.* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d at 155–56. The United States Supreme Court concluded that "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case," and thereby affirmed the defendant's consecutive terms of twenty-five years to life in prison. *Id.* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d at 159.

■ Based on our reading of the above discussed Supreme Court precedent, we hold that the Eighth Amendment contains a "narrow proportionality principle," which we adopt. *Ewing*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 117; *Harmelin*, 501 U.S. at 997, 111 S.Ct. 2680, (Kennedy J., concurring). The overriding inquiry for determining "proportionality" is whether the sentence is commensurate with the gravity of the crime. *See Ewing*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 119; *Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy J., concurring). In making that determination, a court is guided by certain principles "that give content to the uses and limits of proportionality review." *Harmelin*, 501 U.S. at 998, 111 S.Ct. 2680. Namely, "the primacy of the legislature, the variety of legitimate penalogical schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors" and that strict proportionality between the crime and sentence is not necessary be-cause the Eighth Amendment only forbids extreme sentences that are disproportionate. *Ewing*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 119 (quoting *Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy J., concurring)). Further, the Eighth Amendment does not require a comparative analysis "within and between jurisdictions." *Id.* (quoting *Harmelin*, 501 U.S. at 1004–05, 111 S.Ct. 2680 (Kennedy J., concurring)). A comparative analysis may, however, be appropriate when it is determined that the sentence is not commensurate to the gravity of the crime. *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy J., concurring). In any case, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d at 159; *see also Harmelin*, 501 U.S. at 1001, 111 S.Ct. 2680 (Kennedy J., concurring); *Solem*, 463 U.S. at 289–90, 103 S.Ct. 3001.

## B

### Article 1, Section 8, of the Rhode Island Constitution

We now consider the appropriate test for proportionality under the Rhode Island Constitution. Article 1, Section 8 of the Rhode Island Constitution states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted; and all punishments ought to be proportioned to the offense." McKinney contends that, because the phrasing of the Rhode Island Constitution's Cruel and Unusual Punishments clause differs from that under the United States Constitution, the tests are different. Specifically, McKinney argues that this Court's precedent requires a comparison between his sentence and the sentences of other Rhode Island criminals. This is incorrect.

McKinney's argument is based on this Court's decision in *State v. Ouimette*, 479

A.2d 702 (R.I.1984). In that case, we held the Eighth Amendment to the United States Constitution and article 1, section 8, of the Rhode Island Constitution "are identical. Rhode Island's constitution adds the clause that 'all punishments ought to be proportioned to the offense,' and the Eighth Amendment to the Federal Constitution has been interpreted to prohibit 'sentences that are disproportionate to the crime committed.'" *Ouimette*, 479 A.2d at 706 (quoting *Solem*, 463 U.S. at 282, 103 S.Ct. 3001). So holding, we relied on the United States Supreme Court's decision in *Solem* to interpret the proportionality test under article 1, Section 8. Specifically, we held "(i) the gravity of the offense and the harshness of the penalty and (ii) the sentences imposed on other criminals in the same jurisdiction" are both relevant to our review of a Rhode Island defendant's sentence. *Ouimette*, 479 A.2d at 706.

■ McKinney incorrectly argues a comparison between his and other criminal's sentences is the touchstone of proportionality under the Rhode Island Constitution. In rejecting that argument, we are mindful that we are not writing on a clean slate. This Court followed *Solem* in *Ouimette* because it determined that "Rhode Island's constitution add[ed] the clause that 'all punishments ought to be proportioned to the offense,' and the Eighth Amendment to the Federal Constitution has been interpreted to prohibit 'sentences that are disproportionate to the crime committed.'" *Ouimette*, 479 A.2d at 706 (quoting *Solem*, 463 U.S. at 282, 103 S.Ct. 3001). As discussed above, the United States Supreme Court has significantly altered the proportionality test under *Solem*. The proportionality principle of the Eighth Amendment requires a comparison of the defendant's sentence to similarly situated defendants if the Court has determined that the defendant's sentence is grossly disproportionate to the crime itself. *Harmelin*, 501 U.S. at 1005, 111 S.Ct. 2680 (Kennedy J., concurring). The language in article 1, section 8, specifically focuses on a comparison between the punishment and the offense. Therefore, we conclude it is even more appropriate today than in *Ouimette* that we hold that "the two provisions are identical." *Ouimette*, 479 A.2d at 706. Despite our holding in *Ouimette* that when analyzing the proportionality of a sentence it should be compared to other sentences, we now adopt the holding in *Ewing* and reject the test under *Solem*. Thus, a sentence is disproportionate under either the Rhode Island Constitution or the United States Constitution if the sentence itself is unduly harsh when compared with the crime.

## C

### Proportionality

■ Our only inquiry, then, is whether the gravity of McKinney's offense is commensurate with the harshness of the sentence. For the following reasons we hold that McKinney's agreed upon and bargained for sentence of sixty years, with forty to serve, is commensurate to the crime committed by McKinney, a career criminal who callously shot at two people as he fled the scene of an armed-robbery in which he was the perpetrator.

There are many factors to consider when evaluating the gravity of a defendant's offense. The Court in *Ewing* considered the nature of the crime, the defendant's criminal history, the state legislature's intent when it classified the crime, and the state's public safety interest in incapacitating recidivists. While these factors guide our analysis, this list is not exhaustive. We also consider that McKinney consented to the sentence in his plea agreement.

First, McKinney's crime was "well concocted" and "vicious." *McKinney,* 705 A.2d at 1380. He carried a gun. He threatened the hotel clerk with his gun to get the money. He then shot the gun at both a security guard and a police officer as he fled the scene. The hearing justice noted that McKinney did not hit anyone when he fired the gun, but we deem this fact inconsequential because it was sheer luck or poor marksmanship that caused McKinney to miss.

The second principle, the Legislature's prerogative, is less helpful here than it was in *Ewing.* In *Ewing* and *Lockyer,* California's three-strike statute was called directly into question. In the case before us the sentencing justice, although guided by the Legislature's intent, was vested with a great deal of discretion.

In general, a petitioner seeking to overturn a sentence on cruel and unusual punishment grounds bears a heavy burden when the sentence is within statutory limits and was an agreed upon disposition. *See United States v. Zavala–Serra,* 853 F.2d 1512, 1518 (9th Cir.1988). McKinney's sentence was well within the statutory guidelines approved by the Rhode Island Legislature. Section 11–39–1 (recommending a sentence of *at least* ten years for robbery in the first degree but providing no maximum sentence in terms of years). Additionally, McKinney's sentence does not exceed the sentencing guidelines created by the Rhode Island Superior Court Sentencing Study Committee. Specifically, Benchmark 13 applies to McKinney's armed robbery because he was "armed with a dangerous weapon" while committing an act of violence. Benchmark 13 indicates that a sentence of "twenty years and up" is appropriate when robbery in the first degree is accompanied by an aggravated circumstance, for example "discharge of a weapon, whether or not someone is injured." McKinney admitted to shooting at two people, one an off-duty police officer, as he fled to his vehicle after holding up a hotel clerk. His sentence is clearly within Benchmark 13 of the guidelines.

In the context of a negotiated plea, we consider the nature of the agreement entered into by the parties. McKinney agreed to the sentence he now contests to avoid the risk of habitual offender status that would result in a consecutive and mandatory sentence. Pursuant to G.L. 1956 § 12–19–21(a), the state filed a notice with the Court, thereby declaring that, upon conviction, McKinney shall be "deemed a habitual criminal [and] shall be punished by imprisonment * * * for a term not exceeding twenty-five (25) years, in addition to any sentence imposed for the offense of which he or she was last convicted." Thus, McKinney faced an extra twenty-five years to be served after the sentence he received for the six counts pending against him. By voluntarily entering a plea, McKinney avoided the possibility of habitual offender status and the imposition of over two decades of additional incarceration to an already potentially long sentence.

Third, even though McKinney was not sentenced pursuant to a recidivist statute, his prior convictions warrant discussion. Sentencing justices do not sentence in a vacuum, and an offender's criminal record is a relevant sentencing factor. In the decade before McKinney robbed the hotel, he was in and out of jail on robbery and assault charges. Most notably, he has a prior conviction for robbing and beating up a man on the street. The police responded to that crime, and the victim pointed in the direction where McKinney had run. When the police caught McKinney, he picked up a rock and began beating the police officer until backup arrived. Clearly, McKinney

is a violent man with a history of combative behavior when resisting arrest or attempting to flee.

Fourth, we note that McKinney's sentence is "justified by the State's public safety-interest in incapacitating and deterring recidivist felons." *Ewing*, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed.2d at 123. When McKinney robbed the man on the street he used his bare hands to beat up the victim and a rock to attack the police. Since that offense, he has allegedly graduated to armed robbery. In the crime that brought McKinney before us, he used a gun and fired shots at two men who threatened to block his escape. Clearly, McKinney's past punishments did little to rehabilitate him. Thus, his sentence is justified by this state's public-safety interest.

Finally, it is important to note that McKinney's sentence is the result of a plea agreement accepted by the sentencing justice. We have held that a sentencing justice must have wide latitude to accept negotiated plea agreements. *See Armenakes v. State*, 821 A.2d 239, 244 (R.I.2003). Unless the sentence of sixty years, forty to serve, was illegal or unconstitutional, and we hold here it is not, then the sentence should not be altered. Both the state and the Superior Court are expected to live with their respective plea agreements and so are defendants.

We turn briefly to the hearing justice's decision. We note that the hearing justice correctly considered a number of factors in reviewing the constitutionality of McKinney's sentence. He accorded too much weight, however, to some elements that need not have been considered, and failed to address various other elements that support the constitutionality of the sentence. In determining that McKinney's sentence was disparate, the hearing justice considered McKinney's race, educational background, criminal history, the colloquy between the sentencing justice and McKinney at his sentencing hearing, the original plea discussions between the state and McKinney that required a forty-year sentence with twenty years to serve, and fifteen Rhode Island cases involving similar crimes that resulted in significantly lighter sentences. Despite this reasoning, the hearing justice abused his discretion and made several errors in reducing McKinney's sentence.

The hearing justice cited no less than fifteen Rhode Island cases involving similar crimes in which the defendants were given lighter sentences. McKinney submits that the hearing justice properly adopted a "quantifying approach" in determining that his sentence was "a manifestly excessive sentence * * * which constitutes, in effect, cruel and unusual punishment." Pursuant to our holding above, however, a comparison of McKinney's sentence with those of other Rhode Island criminals is inappropriate unless and until it is determined that his sentence is grossly disproportionate to his own crimes. Because McKinney's sentence was not "grossly disproportionate," there was no need to consider any other defendant's sentence.

In addition, the hearing justice determined that the sentence agreed to by the state, the court and McKinney himself violated the constitution because it was "manifestly excessive" and, thus, "cruel and unusual." In *McKinney*, we affirmed the sentencing justice's decision not to reduce sentence pursuant to Rule 35, saying that:

> " 'A motion to reduce a sentence under Rule 35 is essentially a plea for leniency.' *State v. Brigham*, 666 A.2d 405, 406 (R.I.1995) (per curiam) (citing *State v. Tiernan*, 645 A.2d 482, 484 (R.I. 1994)). 'Such motions are within the sound discretion of the trial justice and

may be granted if the court decides on reflection or on the basis of changed circumstances that the sentence originally imposed was, for any reason, unduly severe.' *Id.* (quoting *State v. Byrnes*, 456 A.2d 742, 744–45 (R.I.1983)). 'In reviewing a trial court's decision on a Rule 35 motion, this court's scope of review is extremely limited.' *State v. Sifuentes*, 667 A.2d 791, 792 (R.I.1995) (per curiam). 'This court will interfere with a trial justice's decision only when the sentence is "manifestly excessive." ' *Id.* (quoting *State v. Ouimette*, 479 A.2d 702, 704 (R.I.1984)). 'A manifestly excessive sentence is a sentence disparate from sentences generally imposed for similar offenses when the heavy sentence imposed is without justification.' *Ouimette*, 479 A.2d at 704. The burden of proving that a sentence is manifestly excessive falls to the party seeking reduction. *Id.*" *McKinney*, 705 A.2d at 1379.

Thus, even before McKinney applied for post-conviction relief, this Court decided that his sentence was not "manifestly excessive." The hearing justice was bound by the doctrine of *stare decisis* and erred in holding that McKinney's sentence is "manifestly excessive * * * which constitutes, in effect, cruel and unusual punishment."

■ In addition, it should be noted that the hearing justice failed to give the sentencing justice's decision its proper weight. As discussed above, a sentencing justice must have wide latitude to accept negotiated plea agreements. *See Armenakes*, 821 A.2d at 244. Whether the hearing justice or any other justice may have been more lenient is of no consequence to the constitutionality or legality of the sentence imposed in this case. The sentence was the result of a constitutionally sound plea of *nolo contendere*. We have held that "[a]c-cording to Rule 11 [of the Superior Court Rules of Criminal Procedure], the court may not accept a plea of *nolo contendere* 'without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.' " *State v. Thomas*, 794 A.2d 990, 993 (R.I.2002). To determine whether the sentencing justice has met this requirement we will review " 'the record as a whole and the circumstances in their totality' to determine whether the plea has met the constitutional requirements." *Id.* (quoting *State v. Feng*, 421 A.2d 1258, 1267 (R.I.1980)). Based on our review of the record, we are satisfied the sentencing justice met this requirement by meticulously defining every right guaranteed to a defendant by the constitution and determining from a careful examination that McKinney understood those rights and that he was giving them up. McKinney answered each question posed by the sentencing justice affirmatively and then agreed to accept a sentence of sixty years, forty to serve. We conclude that the hearing justice erred by overlooking the importance of McKinney's plea agreement and removing the risk of being treated as a habitual offender.

Based on many factors, including the horrific nature of the crime, McKinney's criminal history and Rhode Island's interest in punishing repeat offenders, we conclude that McKinney's sentence was commensurate with his crimes. Thus, we hold that McKinney's sentence of sixty years, forty to serve is not "grossly disproportionate" to the crime he committed and, therefore, not in violation of the United States or Rhode Island Constitutions.

## Conclusion

For the reasons stated herein, we reverse the judgment of the Superior Court. We vacate the reduction in sentence and

reinstate the original plea agreement. The record shall be remanded to the Superior Court.