[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This matter is before the Court pursuant to the application of Russell A. Alessio for post-conviction relief pursuant to G.L. §10-9.1-1.
 Travel
In 1997 a Washington County Grand Jury indicted Russell Alessio charging him with three counts of First Degree Child Molestation, one count of Second Degree Child Molestation, one count of Assault with a Dangerous Weapon, and one count of Simple Assault. In May 1998 Mr. Alessio's case was tried before a Washington County jury (W1/1997-0250A). At the close of the State's case, the trial justice granted the defendant's motion for acquittal of one count of First Degree Child Molestation and the count of Felony Assault. The jury later acquitted Mr. Alessio of the two remaining counts of First Degree Child Molestation, and found him guilty of one count of Second Degree Child Molestation and Simple Assault.
In July, 1998 the Court sentenced Mr. Alessio to twenty (20) years at the Adult Correctional Institutions, with fifteen (15) years to serve and a five-year suspended sentence. Mr. Alessio's motion for a new trial was denied, and thereafter, the Rhode Island Supreme Court denied Alessio's appeal, affirming the conviction. State v. Allessio, (sic) 762 A.2d 1190
(R.I. 2000).
In November 2002 Mr. Alessio filed an application for post-conviction relief. Counsel was appointed on his behalf. This matter was heard before the Court on a motion for summary disposition pursuant to G.L. § 10-9.1-6, and the State's motion to force summary disposition in the case was denied. The matter then proceeded to a full evidential hearing before the Court on July 15, 2004.
 Analysis
Mr. Alessio sets forth two arguments to justify his prayer for relief. First, he contends the trial counsel failed to interview or call witnesses on his behalf, and hence counsel was ineffective. Secondly, Mr. Alessio proffers that the sentence he received was overly severe and hence it was cruel and unusual. Other claims by Mr. Alessio were waived at the time of hearing, and hence are no longer the basis for this action.[1]
 Ineffective Assistance of Counsel
The first ground asserted by Mr. Alessio in support of his post-conviction relief application is ineffective assistance of counsel. Mr. Alessio maintains that his attorney's pre-trial conduct and trial conduct failed to satisfy standards of adequate representation as set forth in Strickland v. Washington, 466 U.S. 668 (1984). Specifically, Mr. Alessio argues that his trial attorney failed to locate and contact various pre-trial witnesses to call them to testify at trial. It was Mr. Alessio's contention that those witnesses would significantly impair the credibility of the victim's mother at trial.
At the trial, not only did the mother testify, but the 8-year-old victim testified at length concerning the allegations against Mr. Alessio. The trial attorney for Mr. Alessio testified that he received names of people from Mr. Alessio, who Mr. Alessio wanted to have interviewed. The trial attorney indicated that he used a private investigator to talk with various individuals relative to this case but did not believe it was wise to present a panoply of witnesses who would attempt to disclose Mr. Alessio's whereabouts at different times. The trial attorney indicated that there were significant gaps in dates which he did not believe could be resolved by these witnesses' testimony. He was also concerned that these witnesses would be testifying on collateral matters, and that none of them significantly questioned the credibility of the main witness against him: the 8-year-old child.
Mr. Alessio testified at hearing that he was in a regular relationship with the victim's mother for approximately six (6) months. He resided in the mother's home following his own divorce and would share the same, leaving periodically when he received employment on the construction of power plants. When he returned from one extended job, he stayed for approximately two weeks with another woman, but did not inform the victim's mother. It is Mr. Alessio's belief that these witnesses would assert that the victim's mother discovered Mr. Alessio's other encounters and was encouraging her daughter to concoct the story in revenge.
Mr. Alessio contends that his trial attorney was obligated to obtain the testimony of the other woman friend, a gentleman who may have told the victim's mother of Mr. Alessio's relationship with the other girlfriend, and another woman who may have heard the conversation.
In support of his vague and complicated allegations Mr. Alessio fails to produce the testimony of any of these persons. He fails to show that, had they appeared in court, they would testify in his favor. Although this petition for post-conviction relief has been pending for three years, he has been unable to locate them, or to even obtain sworn affidavits from them, or depose them. Therefore, this Court is left to speculate whether these witnesses would truly be valuable to Mr. Alessio at trial. The trial attorney explained, under oath, his theory of the case, the relevant importance of witnesses and the need to discredit the victim's testimony, rather than the ancillary parties. Raising Mr. Alessio's other personal forays at trial could have caused considerable risk.
To prevail on ineffective assistance allegations, Mr. Alessio must establish that his trial attorney committed error and that such error "clearly resulted from neglect or ignorance rather than informed professional deliberation." State v. Dalo, 477 A.2d, 89, 92 (R.I. 1984). Further, in any "[i]neffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.
After analyzing the testimony, this Court concludes that the trial attorney committed no error by failing to interview these prospective witnesses. He did not disregard or overlook their respective significance to the case. Rather, he measured their significance in terms of his overall legal analysis of the case and in his desire to promptly focus on the issues at hand. The trial attorney's testimony that he declined to consider these witnesses for tactical reasons, was well grounded in the circumstances of the case. Measured against the trial attorney's significant experience in trying criminal matters before Rhode Island juries, the Court is unable to criticize his tactical analysis. Simply put "mere tactical decisions, though ill-advised, do not by themselves constitute ineffective assistance of counsel." Bustamante v. Wall, (Feb. 7, 2005) citing Toole v. State, 748 A.2d 806, 809, (R.I. 2000).
The inability of Mr. Alessio to obtain these witnesses at this proceeding is significant. He and his attorney for this proceeding have had a significant period of time to obtain their testimony, through a court hearing or through deposition. Allegedly, the several individuals could not be located although they all appear to have been in Washington County in early 1997. Mr. Alessio asked that the Court assume that he would have been able to obtain their witnesses for trial testimony, to assume that their testimony would have been in his favor, to assume that the victim's mother was told of his encounter with another woman, and to assume that the testimony of the witnesses would be consistent and credible. Such inferences are unreasonable.
Before leaving the issue of ineffectiveness of counsel, Mr. Alessio inferred that his trial attorney was deficient by failing to interview the doctor who testified at trial. He failed to show that the interview would yield anything beneficial.
The Supreme Court has recently discussed ineffectiveness of counsel claims. In Doctor v. State, 865 A.2d, 1064, 1068 (R.I. 2005), the Rhode Island Supreme Court recently reviewed the standards for determining ineffectiveness of counsel:
 [W]e have adopted the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2062, 80 LED, 2d 674, (1984). See Armenakes v. State, 821 A.2d 239, 245 (R.I. 2003); Brennan v. Vose, 764 A.2d 168, 171 (R.I. 2001); LaChappelle, 686 A.2d at 926; Brown v. Moran, 834 A.2d, 180, 182
(R.I. 1987).
Under Strickland, a two-part test must be satisfied: (1) The Court "must be persuaded that the counsel's performance was deficient " and (2) "that the deficient performance prejudiced that defendant to such a degree that he was deprived of effective assistance of counsel." State v. Figueroa, 639 A.2d 495, 500 (R.I. 1994), citing Strickland, 466 U.S. at 687, 88,104 S. Ct. 2052). Under the first part "[I]n reviewing a claim for ineffective assistance of counsel, [this court has] stated that the benchmark issue is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Toole v.State, 748 A.2d 806, 809 (R.I. 2000) (quoting Tarvis v.Moran, 551 A.2d 699, 700 (R.I. 1998). See also Carpenterv. State, 796 A.2d 1071, 1073-74 (R.I. 2002). Furthermore, "[a] strong presumption in favor of competent representation exists." Figueroa, 639 A.2d 500 (citing Strickland, 466 U.S. at 689, 90, 104 S. Ct. 2052). Under the second part of the test ([p]rejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceedings would have been different". Id. (citing Strickland,466 U.S. at 687, 104 S. Ct. 2052).
Mr. Alessio has not met his burden of establishing that his trial counsel's assistance was ineffective.
 Sentencing
Mr. Alessio claims that the sentence he received was overly severe, constituting cruel and unusual punishment. Mr. Alessio asserts that this Court should look to the Superior Court sentencing guidelines to determine if "the gravity of the offense is commensurate with the harshness of the sentence" and "some type of comparative analysis has to be considered." Petitioner's Response [memorandum] to State's Supplemental Response. March 4, 2005, pp 2-3.
First, our Supreme Court has set a crucial backdrop for review of a sentencing by a trial justice.
 This Court has maintained a `strong policy against interfering with a trial justice's discretion in sentencing matters,' and, therefore, we only will interfere with that discretion `in rare instances when the trial justice has imposed a sentence that is without justification and is grossly disparate from other sentences generally imposed for similar offenses.' State v. Burke, R.I. Supreme Court C.A. 2003-60, June 30, 2005, quoting State v. Rossi, 771 A.2d 906, 908 (R.I. 2001) (mem.) and State v. Malicone, 746 A.2d 135, at 137 (R.I. 2000).
The proper method for reduction of a sentence is a motion pursuant to the Super. Ct. Rules of Crim. P. 35. Such a motion was filed and denied by the trial justice here on December 6, 2001. While a Supreme Court appeal was later docketed, the sentencing issue was apparently not addressed, contrary to the procedural framework established in State v.Bettencourt, 723 A.2d 1101, 1114 (R.I. 1999).
Putting aside the procedural infirmities, this Court concludes that the sentence imposed was not unconstitutionally excessive.
 [A] punishment is `excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals for punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. McKinney v. State, 843 A.2d 463
(R.I. 2004) quoting Coker v. Georgia, 433 U.S. 584, 592, 1977 S.Ct. 2861, 53 L.Ed.2nd 982 (1977).
The overriding inquiry for determining "proportionality" is whether the sentence is commensurate with the gravity of the crime. McKinney v. State, 843 A.2d at 469. This proportionality analysis applies to both the Rhode Island Constitution and the United States Constitution. Id.
Therefore this Court's only inquiry is whether the gravity of McKinney's offense is commensurate with the harshness of the sentence. McKinney v. State at 470. While not all-inclusive, the factors which are to be considered include the gravity of the offense, the defendant's criminal history, the legislative goals and the goal of limiting recidivism.
 Nature of the Crime
The victim's testimony provided a "detailed account of the Second-Degree Child Molestation [which] plainly support[ed] the jury's verdict. She described how the defendant unzipped the fly of his pants and coaxed her into touching him sexually." State v. Allessio,762 A.2d 1190, 1192 (R.I. 1998). The victim, a seven-year-old, was the child of Mr. Alessio's female roommate. As a result, the child was examined medically and testified. As the sentencing justice concluded, she was "obviously traumatized." p. 37.[2]
Without intending to stand in the place of the legislature, the court finds this crime to be detestable and deserving of substantial punishment. As shocking as the crime of Second Degree Sexual Molestation is, in itself, what could be more reprehensible (within the broad parameters of this felony) than penile contact with a seven-year-old? It is appropriate for a civilized society to protect its children from such activity. It is reasonable to parse significant punishment for such a crime.
 Defendant's Criminal History
The sentencing justice appropriately weighed defendant's history as well as his failure to acknowledge responsibility for the crime. (Tr. pp-37-39).
 The Legislature's Intent When it Classifiedthe Crime
R.I.G.L. § 11-37-8.4. states:
 Penalty for second degree child molestation sexual assault — Every person who shall commit second degree child molestation sexual assault shall be imprisoned for not less than six (6) years nor more than thirty (30) years.
Clearly, the legislature imposed a substantial minimum and maximum penalty. As discussed previously, this crime is particularly reprehensible, or as the sentencing judge appropriately labeled it "heinous." (Tr. p. 39)
 The State's Public Safety Interest in Incapacitating Recidivists
Rhode Island has a clear interest in making sure that the crime was not repeated by the defendant or any other member of society, the most appropriate means to do so is by sending a strong message by its punishment. A sentencing justice is not expected to be a soothsayer as to whether the defendant can be rehabilitated, but this issue was appropriately waived by the sentencing justice, transcript p. 36.
Finally, Mr. Alessio urges a comparative approach to sentencing. While some measure of uniformity is appropriate, it is also appropriate for the sentencing justice to consider all the facts and circumstances of a particular crime. The Rhode Island Supreme Court thoroughly analyzed the proportionality of sentencing issue under the Eighth Amendment to the United States Constitution in Article I, Section VIII of the Rhode Island Constitution in McKinney v. State, 843 A.2d 463 (R.I. 2004). In vacating a post-conviction relief order reducing a sentence, the high court concluded "thus a sentence is disproportionate under the Rhode Island Constitution or the United States Constitution if the sentence itself is unduly harsh when compared to the crime." Id. at 470.
As the State notes, viewing sentences afforded to other defendants via a cold register of names and terms, fails to account for the significance of the particular facts. It loses the uniqueness of the particular event, the harm to the particular victim, and all of the other factors weighed by the sentencing justice. As our high court stated, comparing one's "sentence with those of other Rhode Island criminals is inappropriate unless and until it is determined that his sentence is grossly disproportionate to his own crimes," McKinney at 472. Additionally, the register of sentences contains references to defendants who received similar sentencing for violating R.I.G.L. § 11-37-8.4.
Though the Superior Court Benchmarks are important guidelines, they are not mandatory limits.[3] Given the age and likely effect on the victim, the defendant's criminal history, his failure to accept responsibility, and the particular gruesome facts of the crime, some departure from the benchmarks is appropriate. As the high court stated inState v. Ferrara, 818 A.2d 642, 644 (R.I. 2003)
 A manifestly excessive sentence is defined as one which is `disparate from sentence[s] generally imposed for similar offenses when the heavy sentence imposed is without justification.' Id. quoting State v. Ortega, 755 A.2d 841, 841 (R.I. 2000)). "It is the defendant's burden to show that the sentence imposed violates this standard." Id. (quoting Mollicone, 746 A.2d at 137).
* * *
 However, even if defendant could prove that the sentences were disproportionate, and we reject the assertion that he has done so, he still must "meet his burden of showing that no justification existed for the sentence he ultimately received." State v. Cote, 736 A.2d 93, 94 (R.I. 1999) (mem.). Based on our review of the record we conclude that defendant has not established that the sentence he received was unjustified.
Mr. Alessio has failed to show that the sentence imposed at the trial violated the standards set forth above, without justification.
 Conclusion
For the reasons set forth herein, the petition for post conviction relief is denied.
[1] Pre-hearing, Mr. Alessio also claimed that he was denied due process as the State failed to prove its case beyond a reasonable doubt, that the verdict was against the weight of the evidence, and that petitioner's counsel failed to present medical evidence to contradict the testimony of the complaining witness.
[2] All citations to sentencing are from the transcript of Superior Court proceedings of July 14, 1998.
[3] "The purpose of the benchmarks system is to establish a set of consistent sentencing standards in Superior Court and reduce the potential for sentencing disparity. If the system is to accomplish this purpose, it is essential that judges treat certain issues which arise in sentencing in the same manner. The following is a listing of those issues with recommendations on the way in which the benchmarks should be utilized.
1. Departure From the Benchmarks. The sentence range provided for each benchmark is presumed to be appropriate whenever the case under consideration involves the same criminal offense and the same key facts as the benchmark. This presumption is critical to the success of the system.
The Benchmarks are designed to be flexible and to serve as a guideline for other similar offenses, even though the specific circumstances of the crime are not included under any particular benchmark.
An examination of the pertinent key facts and the presence of aggravating or mitigating circumstances should be considered when fashioning sentences not specifically covered by the Benchmarks.
The benchmarks will not serve as sentencing standards unless they are applied consistently. Departures from the sentence range should be made only when substantial and compelling circumstances exist. If a conviction is covered by a benchmark and the sentence imposed is outside the sentence range, the judge must give specific reasons for the departure on the record.
Substantial and compelling circumstances for departure from the benchmarks may include the following:
 (a) harm to the victim.
 (b) defendant's criminal record.
 (c) circumstances of the commission of the crime.
 (d) defendant's motivation (money, provocation, sudden or unexplained impulse or drugs).
 (e) whether the crime was an isolated offense or part of an organized enterprise.
 (f) defendant's age.
 (g) mental or emotional make-up of defendant.
 (h) defendant's attitude toward society.
 (i) defendant's attitude and feeling about the crime (i.e., remorse, repentance, hostility).
 (j) defendant's education.
 (k) defendant's employment.
 (l) that the defendant testified and gave patently false testimony.
 (m) that the defendant testified for the state.
 (n) potentially injurious effects of incarceration.
 (o) restitution.
 (p) attitude of the victim.
 (q) other substantial grounds which tend to mitigate or aggravate the offender's culpability.
In considering whether a defendant's prior criminal record is serious enough to be an aggravating factor in sentencing, the sentencing justice should keep in mind the following:
1. Felony convictions should be given greater weight than misdemeanor convictions. Certain misdemeanor convictions, such as those involving traffic offenses, petty intoxication or any other minor offense, should not be considered at all unless the present offense is a repeat offense or the defendant was given a jail sentence.
2. Remoteness of the conviction should be a factor. Less weight should be given to any prior conviction if the person has led a substantially law abiding life for at least five years.
3. Convictions for similar offenses to the present offense are an aggravating factor.
4. Juvenile misconduct may be considered.
The sentencing justice shall make a record of each sentence imposed and indicate whether one of the benchmarks is applicable and whether the sentence is within the prescribed range.
2. Determining the Benchmark Offense. . . ."
Rhode Island Superior Court Benchmarks.