Eddie M. Linde            :

        v.                :

State of Rhode Island.          :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Eddie M. Linde          :

v.              :

State of Rhode Island.      :

Present:  Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**   This case came before the Supreme Court on September 25, 2013, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  This application for postconviction relief is Eddie M. Linde's (Linde or applicant) third attempt to persuade this Court to either vacate his convictions for second-degree murder and related firearms offenses or vacate the mandatory consecutive life sentence that was imposed for the use of a firearm in the commission of a homicide.  In this postconviction relief appeal, the applicant contends that (1) the mandatory consecutive life sentence imposed under G.L. 1956 § 11-47-3.2 for discharging a firearm while committing a crime of violence resulting in death violates the Eighth Amendment to the United States Constitution and article 1, section 8 of the Rhode Island Constitution; (2) the conviction and sentence for second-degree murder and discharging a firearm while committing a crime of violence resulting in death violates the Double Jeopardy Clause of the United States Constitution and article 1, section 7 of the Rhode Island Constitution; (3) trial counsel was ineffective because (a) when moving to suppress statements made to the police, he failed to argue that the applicant was so intoxicated that he was incapable of knowingly, intelligently, or voluntarily waiving his

- 1 -

right to remain silent; and (b) he failed to present a manslaughter defense based on diminished capacity at the plea bargaining stage and, again, at trial. After reviewing the memoranda submitted by the parties and considering the arguments of counsel, we are satisfied that cause has not been shown, and the appeal may be decided at this time. We affirm the trial justice's denial of postconviction relief.

**Facts and Travel**

The facts of this case were set forth in significant detail in this Court's decision denying defendant's direct appeal. See State v. Linde, 876 A.2d 1115 (R.I. 2005) (Linde I); see also State v. Linde, 965 A.2d 415 (R.I. 2009) (Linde II) (holding that defendant's constitutional claims could not be brought under a motion to correct an illegal sentence under Rule 35 of the Superior Court Rules of Criminal Procedure). We therefore only briefly describe the events leading to this senseless killing.

In 2002, applicant was convicted of nine felony counts, including second-degree murder, for killing his co-worker with a handgun in the parking lot of a motel. Linde I, 876 A.2d at 1118. Although there was evidence that applicant had consumed a significant amount of alcohol on the night of the shooting, the defense raised at trial was accident. Id. at 1120-21, 1129. The applicant was sentenced to forty years imprisonment, twenty years to serve, for second-degree murder and to a mandatory term of life imprisonment for discharging a firearm while committing a crime of violence resulting in death, consecutive to the sentence for second-degree murder. Id. at 1118 n.1. In 2006, applicant successfully moved to reduce the prison time for second-degree murder to ten years to serve. Next, he sought to challenge his sentence on constitutional grounds under Rule 35. Linde II, 965 A.2d at 416. This Court, however, held that constitutional claims were not cognizable under Rule 35. Linde II, 965 A.2d at 417.

In this application for postconviction relief, applicant again asserted his constitutional claims and also raised ineffective assistance of counsel as grounds for vacating his conviction. An evidentiary hearing was held in January 2012 before a justice of the Superior Court, who also had been the trial justice. In addition to documentary evidence, Alan Feinstein (Feinstein), a forensic mental health consultant, offered expert testimony on applicant's behalf. The applicant's trial counsel was called to testify by the state. Feinstein reviewed trial transcripts, witness statements, police reports, and a psychological evaluation of applicant that was prepared a few months after trial. Based on his review of those materials and multiple interviews with applicant, Feinstein concluded that applicant's level of intoxication before, during, and after the events that resulted in the death of his co-worker completely paralyzed applicant's will and deprived him of the power to withstand evil impulses, rendering his mind incapable of forming any sane design. Feinstein also opined that at the time he was interrogated, applicant was so intoxicated that he was unable to provide a police statement with rational intellect and free will. Additionally, Feinstein concluded that applicant does not have "any real recollection" of the events culminating in the death of his co-worker.

The applicant's trial counsel testified that Linde's drug and alcohol use on the night of the murder was a serious issue that he carefully considered in formulating a defense. However, his client insisted repeatedly that he was not so drunk that he could not remember what happened and consistently maintained that the shooting was an accident. Trial counsel also testified that he advised applicant about a potential defense of diminished capacity, but applicant rejected his advice. Additionally, trial counsel advised applicant to refrain from testifying unless he had a good memory of the events. Furthermore, trial counsel testified that he did not receive a plea

offer from the state nor did he solicit an offer because applicant "wanted to go home and wanted complete exoneration."[1]

With respect to the motion to suppress his police statements, trial counsel testified that he did not think he could establish that applicant was so intoxicated as to suffer diminished capacity. It also was his belief that suppression would have been futile because Linde testified at trial, and the statements would be available to impeach his credibility if he gave inconsistent testimony. Finally, the trial justice asked trial counsel if, even in hindsight, he could "in any way have presented a defense of diminished capacity contemporaneously with the defense of accident that your client insisted on?" Trial counsel answered "no."

The trial justice issued a bench decision and denied all relief. First, he disposed of applicant's constitutional challenges to the statute premised on the separation of powers, due process, the Eighth Amendment, and double jeopardy by stating that those issues previously had been decided by this Court. Next, the trial justice found that trial counsel was not ineffective for failing to obtain a plea offer from the state in order to dispose of the case without a trial—first, because the state made no such offer and, second, because applicant sought complete exoneration.

Finally, the trial justice addressed the defense of diminished capacity. As to the suppression issue, he found that the statements applicant made to the police were voluntary and reflected a "deliberateness and cunning" through which Linde "tried to shift blame or extricate himself." The trial justice also declared that the suppression ruling was of no consequence because applicant testified at trial and the state presented eyewitness testimony against him.

---

[1] The applicant was an ironworker from Florida; he was recruited to come to Rhode Island to work on the Ocean State Baptist Church in Smithfield. State v. Linde, 876 A.2d 1115, 1118-19 (R.I. 2005). A six-man crew of ironworkers stayed in three rooms at the Susse Chalet motel in Smithfield. Id. at 1119. Only four went home.

Addressing trial counsel's failure to present a defense of diminished capacity, the trial justice found that "[n]ot presenting a diminished capacity defense was a very sensible tactical decision by experienced trial counsel," noting the logical incompatibility of the defense of accident juxtaposed with a plea of diminished capacity.

## Standard of Review

"The statutory remedy of postconviction relief set forth in G.L. 1956 § 10-9.1-1 is 'available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice.'" Hall v. State, 60 A.3d 928, 931 (R.I. 2013) (quoting Sosa v. State, 949 A.2d 1014, 1016 (R.I. 2008)). "When reviewing the grant or denial of postconviction relief, the trial justice's factual findings and credibility determinations will be upheld 'absent clear error or a determination that the hearing justice misconceived or overlooked material evidence.'" Id. (quoting Lynch v. State, 13 A.3d 603, 605 (R.I. 2011)). "When a postconviction relief decision involves 'questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights[,]' we review those issues de novo." Neufville v. State, 13 A.3d 607, 610 (R.I. 2011) (quoting Hazard v. State, 968 A.2d 886, 891 (R.I. 2009)).

## Cruel and Unusual Punishment

The applicant contends that the mandatory life sentence imposed under § 11-47-3.2 violates the Eighth Amendment to the United States Constitution and article 1, section 8 of the Rhode Island Constitution.[2] This Court has previously declared that a mandatory consecutive life sentence imposed under § 11-47-3.2 survives a constitutional challenge. See State v.

[2] These two provisions "are identical." State v. Ouimette, 479 A.2d 702, 706 (R.I. 1984); see also McKinney v. State, 843 A.2d 463, 470 (R.I. 2004) (reaffirming).

Monteiro, 924 A.2d 784, 795-96 (R.I. 2007) (rejecting the defendant's contention that consecutive life sentences imposed for first-degree murder and discharging a firearm while committing a crime of violence resulting in death constitute cruel and unusual punishment). The applicant's argument that Monteiro is distinguishable because the defendant in Monteiro was convicted of first-degree murder—whereas applicant was convicted of second-degree murder—is unavailing. The holding in Monteiro did not rise and fall with the classification of murder, but rather with the fact that the defendant was convicted of murder and used a firearm. See id.; see also State v. Martinez, 59 A.3d 73, 88-89 (R.I. 2013) (noting that the only difference between first-degree and second-degree murder is the duration of premeditation). When this Court concluded that the Legislature had the authority to mandate "consecutive sentences for murder and using a firearm while committing that murder," we did not distinguish between first-degree and second-degree murder; we decline to draw such a distinction in this case. Monteiro, 924 A.2d at 794.

The applicant places significant emphasis on State v. Ballard, 699 A.2d 14, 17 (R.I. 1997), a case of dubious authority in which the Court concluded that consecutive life sentences—imposed in the discretion of the trial justice—were "unjustifiably out of proportion to the severity of [the defendant's] crimes."[3] In Monteiro, however, this Court held that Ballard "is of no assistance in evaluating the constitutionality of mandatory consecutive sentences." Monteiro, 924 A.2d at 794. Because this case involves a mandatory consecutive life sentence, Ballard is irrelevant to our analysis.

---

[3] The defendant in Ballard was convicted of "conspiracy to kidnap with intent to extort, two counts of kidnapping with intent to extort, kidnapping, carrying a pistol without a license, and three counts of assault with a dangerous weapon." State v. Ballard, 699 A.2d 14, 14 (R.I. 1997).

Finally, applicant attempts to fashion an argument of gross disproportionality under our holding in McKinney v. State, 843 A.2d 463 (R.I. 2004). In McKinney, the Court recognized a narrow proportionality principle, holding that "a sentence is disproportionate under either the Rhode Island Constitution or the United States Constitution if the sentence itself is unduly harsh when compared with the crime." Id. at 470. While "[t]here are many factors to consider when evaluating the gravity of a defendant's offense[,]" the Court's nonexhaustive list of factors included "the nature of the crime, the defendant's criminal history, the state legislature's intent when it classified the crime, and the state's public safety interest in incapacitating recidivists." Id.

We applied the McKinney test in Monteiro, 924 A.2d at 795-96. We held that the defendant's consecutive life sentences did not constitute cruel and unusual punishment in circumstances of a gang-related shooting death of an innocent bystander. Id. The Court concluded that the facts in that case were "precisely the type of gun violence that the Legislature intended to address when it provided for a mandatory consecutive sentence of life imprisonment for using a firearm while committing murder." Id. at 795. The Court also noted that life imprisonment "is not the harshest punishment under our law," but rather that a sentence of life imprisonment without the possibility of parole is the harshest. Id.

In this case, although not a gang-related murder, we are nonetheless confronted with yet another tragic incident of gun violence, the very crime the Legislature sought to curtail when it enacted this statutory scheme. The fatal shooting in this case carried over from an earlier altercation. See Linde I, 876 A.2d at 1119-20 (describing weaponless scuffle between applicant and co-worker Mosley, resulting in applicant leaving work for the day due to injury). Although applicant offered three different versions of the events, each with a different explanation for how

he ended up in the parking lot with the gun when his co-workers returned from work, it is clear that applicant "instigated the confrontation by stepping into the parking lot carrying a loaded weapon * * *." Id. at 1131. As a result of inciting a second confrontation and introducing a gun into the dispute, applicant killed his co-worker, Randy Silas, whose only involvement in the dispute was that he was in the line of fire.

Finally, to the extent that applicant contended at oral argument that the mandatory life sentence is disproportionate to the ten-year term imposed after the sentence was reduced for second-degree murder, that argument distorts the inquiry. First, the test is whether "the sentence itself is unduly harsh when compared with the crime," not whether it is disproportionate to the sentence imposed for a different conviction in the same indictment. McKinney, 843 A.2d at 470. The mandatory life sentence was imposed for discharging a firearm while committing a crime of violence resulting in death. Also, applicant was sentenced to forty years at the Adult Correctional Institutions for second-degree murder, with twenty years to serve. The largess of the trial justice who reduced the sentence to ten years to serve does not give rise to any constitutional infirmity in connection with the mandatory consecutive life sentence for the firearm offense.

Therefore, we are satisfied that the mandatory consecutive life sentence for discharging a firearm while committing a crime of violence resulting in death is not unconstitutional.

## Double Jeopardy

The applicant contends that judgments of conviction and sentences for the dual offenses of discharging a firearm while committing a crime of violence and second-degree murder (the crime of violence) violate the Double Jeopardy Clause of the United States Constitution and article 1, section 7 of the Rhode Island Constitution. "This Court long has held that '[b]ecause of

the similar wording and purpose underlying the state and federal constitutional provisions on this subject, Rhode Island cases have hewed closely to federal double-jeopardy law when applying the analogous clause in the Rhode Island Constitution.'" State v. Marsich, 10 A.3d 435, 442 (R.I. 2010) (quoting State v. Rodriguez, 822 A.2d 894, 906 (R.I. 2003)). The Double Jeopardy Clause protects "a criminal defendant from multiple trials for the same offense * * * and prohibits a sentencing court from imposing greater punishment than the legislature has proscribed." Id. (citing Missouri v. Hunter, 459 U.S. 359, 366 (1983)). Recently, in Marsich, this Court summarized the two double-jeopardy tests:

> "The determination of whether a defendant is placed in double jeopardy can be made in one of two ways. The first method is the 'same evidence' test set forth in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and adopted by this Court almost forty years ago. * * * Under this analysis, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' * * *

> "The second manner in which an alleged double jeopardy violation is analyzed is the test first established in Hunter, 459 U.S. at 365-66 * * * and subsequently adopted by this Court. * * * This analysis requires the Court to 'examine the challenged statutes to ascertain whether the Legislature intended to authorize cumulative sentencing' for the offenses contained in the indictment. * * * If the legislative intent underlying the enactment is clear, consecutive sentences upon conviction under both statutes does not offend principles of double jeopardy, 'regardless of whether both statutes proscribe the same conduct under Blockburger.'" Marsich, 10 A.3d at 442.

Here, applicant's double jeopardy argument fails both tests. In Rodriguez, 822 A.2d at 906, the defendant was accused of both first-degree murder and using a firearm while committing a crime of violence. The Court held that the trial court's imposition of consecutive life sentences did not violate either federal or state double jeopardy because "[e]ach count

required proof of a separate and additional fact that the other did not; to wit: murder and using a firearm, respectively." Id. The same two offenses (murder and using a firearm while committing a crime of violence) are implicated here; thus, applicant's constitutional rights were not violated by his convictions and resulting sentences for both offenses. Further, under a Hunter analysis, applicant's claim also fails because "[i]n this statutory provision, the General Assembly clearly has expressed its intent that a guilty defendant should receive consecutive sentences." Rodriguez, 822 A.2d at 908; see also Monteiro, 924 A.2d at 794 ("It is the Legislature's prerogative to authorize cumulative punishments; when it does so, it is the judicial task to impose that sentence in due course.").

Therefore, we conclude that the judgments of conviction and sentence for both second-degree murder and discharging a firearm while committing a crime of violence do not violate the Double Jeopardy Clause of either the United States Constitution or the Rhode Island Constitution.

**Ineffective Assistance of Counsel**

The applicant asserts that he was deprived of the effective assistance of counsel because (a) trial counsel failed to argue that applicant was too intoxicated to knowingly, intelligently, or voluntarily waive his right to remain silent, and (b) trial counsel failed to present a manslaughter defense based on diminished capacity at the plea bargaining stage and again at trial. This Court evaluates a claim of ineffective assistance of counsel under the criteria set forth in Strickland v. Washington, 466 U.S. 668 (1984). Guerrero v. State, 47 A.3d 289, 300 (R.I. 2012). "First, the applicant must establish that counsel's performance was constitutionally deficient; '[t]his requires [a] showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed * * * by the Sixth Amendment.'" Bido v. State, 56 A.3d 104, 110-11 (R.I.

2012) (quoting Neufville, 13 A.3d at 610). In making this determination, "we scrutinize the performance of counsel in a 'highly deferential' manner, * * * affording counsel 'a strong presumption that counsel's conduct falls within the permissible range of assistance.'" Id. at 111. Only if it is determined that trial counsel's performance was constitutionally deficient does the Court proceed to the second prong of the Strickland test, in which the applicant "must show that the 'deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.'" Guerrero, 47 A.3d at 300-01 (quoting Brennan v. Vose, 764 A.2d 168, 171 (R.I. 2001)).

## A

### The Motion to Suppress

The applicant argues that it was error for the trial justice to focus on the suppression hearing testimony, rather than Feinstein's testimony at the postconviction relief hearing, in concluding that trial counsel's decision not to seek exclusion of applicant's statements to the police based on diminished capacity did not amount to ineffective assistance of counsel. The trial justice began his analysis by noting that trial counsel did move to suppress the statements, "in part because he felt his client was prevented from making a phone call he thought [his client] was entitled to make." The trial justice stated that applicant's purported intoxication when he was questioned by the police was an issue in the suppression hearing: "[Trial counsel] didn't speak too much about alcohol or his coherency, but I did." After summarizing the case law on diminished capacity and an accused's ability to understand and waive his Fifth Amendment rights, the trial justice recounted his finding that applicant's statements to police were "made in a totally voluntary fashion." Later in his decision, after acknowledging Feinstein's opinion testimony, the trial justice concluded that there was "no way" that trial counsel could have

- 11 -

successfully sought to suppress the statements based on Linde's intoxication. He also found that the statements would have come into evidence in due course because applicant took the stand in his own defense and the statements would be allowable as prior inconsistent statements. See R.I. R. Evid. 801(d)(1) (prior inconsistent statements by a witness are not hearsay); see also Harris v. New York, 401 U.S. 222, 225-26 (1971) (holding that impeachment of the defendant testifying in his own defense with prior inconsistent statements does not violate Miranda). The trial justice found that this trial strategy was the product of applicant's own statements to his attorney that he had a good memory of that evening and that his co-worker's death was an accident. Accordingly, we agree with the findings of the trial justice: we are of the opinion that trial counsel was not constitutionally ineffective for failing to specifically seek to suppress Linde's statements to police based on applicant's alleged diminished capacity, and note that, because he testified at trial, a necessary component in a defense of accident, the statements would have been used against him.

**B**

**Manslaughter Defense and Plea Bargaining**

The applicant points to trial counsel's failure to present a manslaughter defense based on diminished capacity, both at trial and as grounds for a plea bargain as the basis for ineffective assistance of counsel. "Under a diminished-capacity defense, a defendant submits that, although he is responsible for the prohibited act, 'his mental capacity may have been diminished by intoxication, trauma, or mental disease so that he did not possess the specific mental state or intent essential to the particular offense charged.'" Washington v. State, 989 A.2d 94, 101 (R.I. 2010) (quoting State v. LaCroix, 911 A.2d 674, 679 (R.I. 2006)).

The applicant's trial counsel, who is a senior, well-respected member of the criminal defense bar, gave forthright and candid testimony with respect to the dilemmas that he faced in formulating a defense in this case. He testified that applicant adamantly and repeatedly insisted that he had a clear memory of the events that took place and insisted that the shooting was an accident. Thus, for trial counsel to present a diminished capacity defense in addition to applicant's contention that it was an accident would require him to convince the jury that applicant's memory of the events was such that they should believe his testimony that the shooting was an accident; but, on the other hand, if they did not believe applicant's version of events, then they should find that he was so drunk that he could not form the requisite mental state for murder—an intentional killing of another human being. Trial counsel's decision to proceed with the defense of accident without layering an additional diminished capacity defense was therefore a sound tactical decision, such that "tactical decisions by trial counsel, even if ill-advised, do not by themselves constitute ineffective assistance of counsel." Rivera v. State, 58 A.3d 171, 180-81 (R.I. 2013) (quoting Rice v. State, 38 A.3d 9, 18 (R.I. 2012)). "This Court 'will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel.'" Id. at 181 (quoting Rice, 38 A.3d at 17). In this case, counsel's performance reflects not only a reasonable decision by a seasoned attorney, but was the only strategy available under the circumstances the client created.

Turning to the final issue—whether there should have been plea discussions in advance of trial—we are satisfied that trial counsel was not ineffective given the instruction from his client. It is undisputed that there was no offer from the state to resolve the case. It is also undisputed that the applicant notified his lawyer that he "wanted to go home and wanted complete exoneration." Although we are cognizant of recent United States Supreme Court cases

that address the importance of the plea bargaining stage in a criminal trial, those cases are distinguishable from the case before us because the applicant's trial counsel was faced with no plea offer from the state and a client demanding a complete exoneration, which is incompatible with a guilty plea. See, e.g., Missouri v. Frye, 132 S. Ct. 1399, 1410 (2012) ("a defendant has no right to be offered a plea"); Lafler v. Cooper, 132 S. Ct. 1376, 1387 (2012) ("If no plea offer is made * * * the issue raised here simply does not arise."); Padilla v. Kentucky, 559 U.S. 356, 374 (2010) (holding that "counsel must inform [his or] her client whether his plea carries a risk of deportation"). Thus, we are of the opinion that counsel's decision to proceed to trial was in accordance with his client's wishes and did not constitute ineffective assistance.

## Conclusion

For the reasons articulated above, we affirm the judgment below. The papers may be remanded to the Superior Court.

Justice Indeglia did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**      Eddie M. Linde v. State of Rhode Island.

**CASE NO:**      No. 2012-125-Appeal.
                               (PM 06-1553)

**COURT:**      Supreme Court

**DATE OPINION FILED:**      October 31, 2013

**JUSTICES:**      Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

**WRITTEN BY:**      Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**      Providence County Superior Court

**JUDGE FROM LOWER COURT**:

     Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

     For Applicant:  C. Daniel Schrock, Esq.

     For State:  Christopher R. Bush
                      Department of Attorney General