**Supreme Court**

No. 2012-82-Appeal.
(PM 09-900)

Javier Merida                    :

       v.                        :

State of Rhode Island.           :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| Javier Merida | : |
| v. | : |
| State of Rhode Island. | : |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.** In this appeal, we review the denial of an application for postconviction relief. Javier Merida (Merida or applicant) was convicted of two counts of first-degree child molestation and one count of second-degree child molestation. We affirmed those convictions in his direct appeal. See State v. Merida, 960 A.2d 228, 240 (R.I. 2008). Merida then applied for postconviction relief, arguing that he was deprived of his right to the effective assistance of counsel. Merida's application for postconviction relief was denied. The applicant sought review by this Court, and both parties appeared pursuant to an order directing them to show cause why the issues raised in this appeal should not be decided summarily. We are satisfied that cause has not been shown, and we affirm the denial of the application for postconviction relief.

## Facts and Travel

This Court thoroughly recounted the facts as borne out by the trial testimony in our consideration of applicant's direct appeal. See Merida, 960 A.2d at 230-34. Therefore, we only recount facts salient to this appeal and other facts as necessary for context.

During the May 2006 trial, the complainant, Betsy,[1] testified that Merida—her paternal grandfather—repeatedly molested her when she was between the ages of seven and ten years. Merida, 960 A.2d at 230-31. She testified that the molestations occurred during weekends spent with her paternal grandparents, but when her paternal grandmother was not home. Id. at 231. Specifically, Betsy testified to one instance of breast grabbing, one instance of digital-vaginal penetration, and three instances of vaginal intercourse; however, the testimony of a third instance of vaginal intercourse was unexpected. Id.

Merida's niece by marriage, Lisa, also testified at trial. Merida, 960 A.2d at 233. Lisa testified that, when she was five to ten years old, Merida molested her when she was alone with him. Id. The trial justice permitted this testimony over objection by trial counsel, who argued that the evidence should have been excluded under Rule 404(b) of the Rhode Island Rules of Evidence. Merida, 960 A.2d at 232. Although Lisa was the first witness to testify for the state, Merida's trial counsel did not object to the order in which the state presented the witnesses. Id. at 233.

Ultimately, the jury convicted Merida of two counts of first-degree child molestation and one count of second-degree child molestation; Merida was acquitted of a third count of first-degree child molestation. We affirmed his convictions on his direct appeal. Merida, 960 A.2d at 240. Merida then brought this application for postconviction relief on February 13, 2009, arguing that his trial counsel's performance amounted to ineffective assistance. The Superior Court justice who also presided over Merida's trial took evidence and heard argument regarding

---

[1] We adopt the pseudonyms used in our opinion on the direct appeal.

the application.[2]  In a written decision, the trial justice recounted the relevant evidence and assessed the credibility of both trial counsel and applicant.  The trial justice found that applicant failed to establish that trial counsel's performance was deficient, and she therefore denied the application.

**Standard of Review**

"The statutory remedy of postconviction relief set forth in G.L. 1956 § 10-9.1-1 is 'available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice.'"  Hall v. State, 60 A.3d 928, 931 (R.I. 2013) (quoting Sosa v. State, 949 A.2d 1014, 1016 (R.I. 2008)). "When passing on an application for postconviction relief, this Court accords great deference to the factual determinations of the Superior Court hearing justice."  Neufville v. State, 13 A.3d 607, 610 (R.I. 2011) (citing Rodrigues v. State, 985 A.2d 311, 313 (R.I. 2009)).  Accordingly, this Court "will uphold a postconviction relief decision absent clear error or a determination that the hearing justice misconceived or overlooked material evidence."  Rodrigues, 985 A.2d at 313. However, "[w]hen a postconviction relief decision involves 'questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights[,]' we review those issues de novo."  Neufville, 13 A.3d at 610 (quoting Hazard v. State, 968 A.2d 886, 891 (R.I. 2009)).  "[F]indings of historical fact, and inferences drawn from those facts, will still be accorded great deference by this Court, even when a de novo standard is applied to the issues

---

[2] The application for postconviction relief was heard together with a motion for a new trial based on newly discovered evidence.  The trial justice denied the motion for a new trial, and Merida appealed; however, the appeal was later withdrawn.

of constitutional dimension." Hazard, 968 A.2d at 891 (quoting Gonder v. State, 935 A.2d 82, 85 (R.I. 2007)).

This Court evaluates a claim of ineffective assistance of counsel under the criteria set forth in Strickland v. Washington, 466 U.S. 668 (1984). Linde v. State, 78 A.3d 738, 745 (R.I. 2013). "First, the applicant must establish that counsel's performance was constitutionally deficient; [t]his requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed * * * by the Sixth Amendment." Linde, 78 A.3d at 745 (quoting Bido v. State, 56 A.3d 104, 110-11 (R.I. 2012)). This review is highly deferential, and we afford counsel "a strong presumption that counsel's conduct falls within the permissible range of assistance." Id. (quoting Bido, 56 A.3d at 111). "Only if it is determined that trial counsel's performance was constitutionally deficient does the Court proceed to the second prong of the Strickland test, in which the applicant must show that the 'deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.'" Id. at 745-46 (quoting Guerrero v. State, 47 A.3d 289, 300-01 (R.I. 2012)).

**Analysis**

The only issue properly before this Court is whether applicant was denied his constitutional right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution and article 1, section 10 of the Rhode Island Constitution.[3] The applicant presents a myriad of reasons for his claim. They are discussed seriatim.

---

[3] Whether the trial justice erred in admitting evidence under Rule 404(b) of the Rhode Island Rules of Evidence is not properly before this Court in this application for postconviction relief. In applicant's direct appeal, we held that the trial justice did not abuse her discretion in admitting Lisa's testimony. See State v. Merida, 960 A.2d 228, 239 (R.I. 2008). Accordingly, the doctrine of res judicata bars the relitigation of this issue, despite appellate counsel's attempt to breathe

The applicant contends that trial counsel was ineffective because he failed to investigate, call witnesses, or properly cross-examine witnesses about the complainant's motive to lie. This argument focuses on allegations of tension that existed between Betsy's maternal grandmother, Donna, and the Merida family that arose at the time the complainant was born. According to trial counsel, the defense's theory at trial was that her grandmother pressured Betsy into making the allegations against Merida. Although trial counsel acknowledged that he was aware of the animosity between the families at the time of Betsy's birth, he contends that the Merida family never told him "why [Donna] wanted to see Javier Merida prosecuted for child molestation."

The applicant testified at the hearing and averred that he provided trial counsel with the details of an ongoing inter-familial conflict—in particular, issues regarding Betsy's custody, changing her last name, and changing her health insurance—and that he asked trial counsel to hire an investigator to explore the family dynamics. Trial counsel, however, testified that he did not recall any discussion with the Merida family about changes to Betsy's custody, last name, or health insurance. The trial justice found trial counsel's version of the discussions with his client to be "highly credible" and based on both his memory and his detailed notes. Conversely, she found that Merida's version lacked credibility. Accordingly, the trial justice was satisfied that trial counsel adequately explored any motives Betsy may have had to fabricate her testimony.

Before this Court, applicant asserts that trial counsel's actions were not a "reasonable exercise of strategy." However, this argument is largely predicated upon Merida's version of events, which the trial justice found to be not credible. This Court defers to a trial justice's findings on credibility. See Doctor v. State, 865 A.2d 1064, 1068 n.5 (R.I. 2005) ("[I]n

---

new life into it. See Taylor v. Wall, 821 A.2d 685, 688 (R.I. 2003) ("Res judicata bars the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them.").

reviewing an application for postconviction relief, we defer to the trial justice's findings on credibility unless clearly wrong."). Accepting trial counsel's version—that he did not know the specifics of the ongoing animosity between the families—we agree with the trial justice that it was reasonable for trial counsel to not pursue it any further. See Rice v. State, 38 A.3d 9, 17 n.11 (R.I. 2012) ("We note that '[o]n review of an application for post-conviction relief we are bound by the trial justice's determination concerning credibility.'") (quoting State v. Feng, 421 A.2d 1258, 1273 (R.I. 1980)). An attorney cannot pursue a potential defense if he or she is unaware of the specifics of that defense. Furthermore, the record discloses that trial counsel examined Betsy for any potential influence by Donna, and he argued that issue to the jury. Therefore, trial counsel was not constitutionally deficient with respect to the complainant's motive to lie.

The applicant next contends that trial counsel was ineffective because he failed to present a medical expert to rebut the testimony of Dr. Christine Barron (Dr. Barron). Doctor Barron examined Betsy after she disclosed Merida's abuse. Testifying during the state's case-in-chief, Dr. Barron testified that the results of Betsy's examination were normal. When asked whether a normal examination may nonetheless be consistent with allegations of vaginal penetration, Dr. Barron stated that "[a] normal examination neither rules out nor confirms the possibility of sexual abuse or prior penetration."

The applicant attempts to assign constitutional deficiency to his trial counsel's failure to call a medical expert to rebut Dr. Barron's opinion. However, there was nothing for applicant to rebut. Doctor Barron's conclusion was equivocal: her testimony did not indicate that Betsy was sexually abused (much less, sexually abused by Merida). Furthermore, trial counsel did engage an expert, Dr. Patricia Crane (Dr. Crane), to review the records of Betsy's examination.

Although the record discloses that Dr. Crane requested additional information and trial counsel did not comply with that request, her evaluation of the medical records she did review similarly was equivocal. She stated that (1) "Any expert, defense or prosecution[,] would have to say that there is always the possibility of no physical injuries"; (2) the hymen "may remain with smooth retracted edges after digital penetration"; (3) "No one would be able to say for sure if the notch is related to a past tear in the tissue or if it is a normal variation"; and (4) "With no definitive clinical findings, as in this case, there is no way to say for sure who did what [and] when, unless the child has a sexually transmitted disease." (Emphases added.) Thus, Dr. Crane's opinion was consistent with Dr. Barron's opinion. Because Dr. Barron's conclusion was equivocal and because the expert advice that trial counsel received did not contradict it, trial counsel's performance was not constitutionally deficient based on his decision to not present a medical expert to testify. See Linde, 78 A.3d at 745 (noting strong presumption that counsel's performance was in the permissible range of assistance).

Finally, regarding the medical testimony, applicant asserts that trial counsel was ineffective for his failure to request a continuance to review an article referenced by Dr. Barron during her testimony. Trial counsel testified that it would have prolonged Dr. Barron's testimony and would have had little impact in light of her previously stated medical opinion. The trial justice agreed and found trial counsel's decision to be a reasonable strategic decision. We are satisfied that the trial justice did not err in concluding that this was a reasonable tactical decision, particularly in light of the fact that Dr. Barron's testimony on the issue was equivocal.

The applicant next contends that trial counsel was ineffective because he prevented applicant from testifying in his own defense. Merida did not testify at trial, but his version of the events leading to this decision varied greatly from that of counsel. Trial counsel testified that he

discussed the pros and cons of testifying with his client. In fact, he conducted a mock exercise consisting of both direct and cross-examination with Merida and told him that it went well. However, after the conclusion of the state's case, trial counsel testified that he recommended Merida not testify because trial counsel thought he had established a reasonable doubt defense, and, if Merida testified, the case would turn into a credibility contest for the jury, and not whether there was reasonable doubt. Trial counsel testified that he thought a great deal about this recommendation and consulted another veteran defense attorney regarding this decision. Trial counsel testified that he did not recall Merida telling him that he wanted to take the stand; he testified that Merida concurred with his recommendation. Merida, on the other hand, testified that trial counsel knew that he wanted to testify, and that Merida left the mock examination session with the impression that he would testify the next day. According to Merida, he was surprised when trial counsel did not call him to testify.

The trial justice found trial counsel's testimony on this issue more credible than applicant's testimony. Furthermore, the Court found that Merida and trial counsel discussed the issue and that Merida "knowingly and voluntarily accepted [trial counsel's] recommendation that he not testify." We defer to the trial justice's ruling on this point. See Doctor, 865 A.2d at 1067. Accordingly, we are satisfied that the trial justice's finding—that it was a reasonable strategic decision for trial counsel to recommend that Merida not testify—also is supported by the evidence and is not clearly wrong. See id.

The applicant next contends that trial counsel was ineffective because he failed to properly cross-examine Lisa and neglected to object to the state's order of proof at trial. The indictment against Merida charged him with abusing both Betsy and Lisa; the first trial ended in a mistrial because Lisa did not appear to testify, and the charges against Merida pertaining to

Lisa's allegations were dismissed. The applicant contends that trial counsel was deficient by not examining Lisa about her failure to appear at the first trial. Trial counsel, however, testified that he did not do so because it would highlight to the jury that a grand jury had indicted Merida on separate counts concerning Lisa as well as Betsy and that information could result in prejudice to Merida. Regarding his failure to object to the order of witnesses, trial counsel testified that he considered the order of proof to be immaterial because he had solid grounds for effective cross-examination of Lisa. The trial justice found this decision to be a reasonable and strategic one. Clearly, vigorous examination of Lisa, another putative victim, was a risky undertaking, and reference to an additional indictment would have exacerbated the impact of Lisa's testimony. Because trial counsel believed that he had better cross-examination material against Lisa and that the order in which the evidence was presented was of no moment, his decision not to object to the order of witnesses was a reasonable tactical decision.

Finally, the applicant stated in his initial Rule 12A statement that he wished to assert seven additional grounds for postconviction relief on appeal that were raised below and articulated in an exhibit attached to his memorandum. Although these issues were raised in the Superior Court, they were not argued in any detail nor were they addressed by the trial justice. Additionally, the Rule 12A statements themselves contain no argument on these issues. Therefore, these issues are waived.[4] Kaveny v. Town of Cumberland Zoning Board of Review, 875 A.2d 1, 10 (R.I. 2005) ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the

---

[4] Although we deem these issues waived, we note that they were raised in the Superior Court—purportedly to preserve Merida's rights in federal court—and the trial justice permitted the relevant portion of applicant's written memoranda to be submitted as a full exhibit. We are satisfied that our decision here and our decision on direct appeal address the substantive concerns raised in these additional grounds.

legal questions raised, and therefore constitutes a waiver of that issue.") (quoting <u>Wilkinson v. State Crime Laboratory Commission</u>, 788 A.2d 1129, 1131 n.1 (R.I. 2002)); <u>see</u> <u>also</u> <u>Horton v. Portsmouth Police Department</u>, 22 A.3d 1115, 1130 (R.I. 2011) (concluding that, although a written submission "raise[d] questions," the lack of "meaningful arguments, analysis, discussion, or citation of authority" did not comply with Article I, Rule 16 of the Supreme Court Rules of Appellate Procedure) (quoting <u>State v. Arruda</u>, 113 R.I. 59, 65, 317 A.2d 437, 440 (1974)).

## Conclusion

The trial justice found that trial counsel performed at a high level. We concur with that assessment. Accordingly, we affirm the judgment denying the application for postconviction relief. The papers in this case may be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**        Javier Merida v. State of Rhode Island.

**CASE NO:**                  No. 2012-82-Appeal.
                                      (PM 09-900)

**COURT:**                     Supreme Court

**DATE OPINION FILED:**  June 24, 2014

**JUSTICES:**                  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**             Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                                      Associate Justice Netti C. Vogel

**ATTORNEYS ON APPEAL:**

                                      For Petitioner:  Sean R. Doherty, Esq.

                                      For State:  Lauren S. Zurier
                                                        Department of Attorney General