**Supreme Court**

No. 2012-49-Appeal.
(PM 02-1591)

Joseph Perry                          :

v.                          :

State of Rhode Island.                          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Joseph Perry　　　　　　　　：

v.　　　　　　　　：

State of Rhode Island.　　　　　：

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Robinson, for the Court.**  Joseph Perry appeals from the July 7, 2010 denial of

his application for postconviction relief in the Providence County Superior Court.   This case

came before the Supreme Court pursuant to an order directing the parties to appear and show

cause why the issues raised in this appeal should not be summarily decided.  After a close review

of the record and careful consideration of the parties' arguments (both written and oral), we are

satisfied that cause has not been shown and that this appeal may be decided at this time.  For the

reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

According to Mr. Perry's application for postconviction relief and his filings before this

Court, his criminal case originally went to trial in November of 1995.[1]  He was convicted by a

jury of one count of conspiracy to commit assault with a dangerous weapon and one count of

assault with a dangerous weapon.  Mr. Perry was also charged with one count of first-degree

---

[1]     We note that the trial in November of 1995 is not the trial at issue in this case.

murder; however, according to Mr. Perry's application for postconviction relief, the jury was "unable to reach a verdict" on the murder charge. This Court upheld his conviction on the conspiracy and assault charges in State v. Perry, 725 A.2d 264, 268 (R.I. 1999). A second jury trial on the first-degree murder charge was then held on September 21, 1998, and Mr. Perry was convicted by the jury of one count of first-degree murder; he was sentenced to life imprisonment on the murder charge.[2] This Court denied Mr. Perry's appeal from that conviction in State v. Perry, 770 A.2d 882, 887 (R.I. 2001).

On March 28, 2002, Mr. Perry filed an application for postconviction relief; he then filed an amended application in March of 2005 and a second amended application in March of 2010. In his application and the accompanying memorandum, Mr. Perry contends that he did not receive a fair trial in 1998 because the justice who presided over his second murder trial had, while in private practice, represented him in Family Court in 1978 and 1980, when Mr. Perry was a minor. Accordingly, Mr. Perry avers that that trial justice should have recused. Mr. Perry also alleges that his counsel at the second murder trial was ineffective because: (1) he did not seek the trial justice's recusal; (2) he did not present evidence to support a diminished capacity defense; and (3) he did not allow Mr. Perry to testify on his own behalf at the trial.

On April 23, 2008, Mr. Perry's court-appointed attorney submitted a no-merit memorandum and a motion to withdraw as counsel, pursuant to the requirements in Shatney v. State, 755 A.2d 130 (R.I. 2000). Mr. Perry's attorney was allowed to withdraw at a hearing on the application for postconviction relief on April 30, 2008. Mr. Perry eventually retained new counsel, and a hearing was held on his application for postconviction relief on April 6, 2010. We relate below the salient aspects of what transpired at that hearing.

---

[2]     It is from this conviction that Mr. Perry seeks postconviction relief.

**A**

**The Testimony of Joseph Perry**

Mr. Perry testified that the justice who presided over his second murder trial had represented him on a robbery charge when Mr. Perry was a juvenile. He stated that he did not realize that connection initially; however, he added that, about three days into the murder trial in September of 1998, his brother pointed it out to him. It was Mr. Perry's further testimony that he then communicated his thought as to what he considered to be a potential conflict to his attorney the next day while meeting with him in the "cellblock." Mr. Perry further stated that he told his attorney that he did not feel "comfortable" with the trial justice continuing to preside over the second murder trial.[3] Mr. Perry stated: "I didn't feel comfortable with him being there because he was only going to draw one conclusion in my mind and I didn't believe it was going to give me a fair shake." He testified that his attorney then told him that "they're not going to change the judge in the middle of a trial."

Mr. Perry was asked what he was seeking in the postconviction relief action, and he responded that he wanted "some kind of offer like they offered [his] co-defendant." He further stated: "They offered me nothing, never offered me anything; some kind of relief;" he added, "I'm just looking for some kind of remedy." It should be borne in mind, however, that on cross-examination, Mr. Perry expressly acknowledged that he had killed the victim.

On cross-examination, Mr. Perry was confronted with the fact that, in his filings in support of his application for postconviction relief, he had stated that, <u>before</u> the 1998 murder trial commenced, he knew that the justice who presided over that trial had represented him as a

---

[3]     We deem it important to note that, after an explanation by the hearing justice, Mr. Perry expressly waived his attorney-client privilege with respect to his communications with the attorney who served as his counsel for the second murder trial.

lawyer; that statement was contrary to his testimony during his direct examination.  Mr. Perry additionally acknowledged on cross-examination that he never asked the attorney who represented him at his second murder trial to move for a mistrial or to "stand up and tell the judge, inform the judge" of Mr. Perry's concerns with respect to the justice's potential prejudice against him.  When he was asked the following question: "[A]s far as you know [the trial justice] had no idea that he had formerly represented you * * * ?" Mr. Perry responded: "Not to my knowledge."

## B

### The Testimony of Thomas Gatone

Thomas Gatone testified that, at the time of the hearing on the application for postconviction relief, in 2010, he had been recently paroled from the Adult Correctional Institutions.  He testified that, while in the cellblock during his own trial for robbery, he overheard a conversation between Mr. Perry and his lawyer in which Mr. Perry told his lawyer that "the judge represented him before, I guess when he was younger as a lawyer and that he thought that might be a conflict."  He testified that the conversation "stuck in [his] head" because he had a personal experience where he believed there was a conflict of interest present in a case in which he was involved.  He also stated on direct examination that, after his robbery trial, he had not appeared before the Superior Court in connection with any further crimes.

On cross-examination, Mr. Gatone stated that the conversation which he overheard in the cellblock had taken place in 1996, while he was on trial for robbery.  On redirect examination, Mr. Gatone conceded that he was not "clear on the date as far as the exact year."  Mr. Gatone stated as follows:

> "I have a hard time remembering long distance years apart; even
> though I have my problem, I do remember the day we were in the

cellblock and Mr. Perry talked about it. It could have been '98, '96."

On recross-examination, he stated that, in fact, the conversation which he overheard had taken place in 1998; he added that he "made a mistake" when he said that it was in 1996. The date of the conversation about which Mr. Gatone was testifying was important because, as he conceded in his testimony, his sentencing at the conclusion of his robbery trial occurred on January 11, 1996, whereas Mr. Perry's second murder trial was held in 1998; Mr. Gatone had testified on direct examination that he had not appeared before the Superior Court after his robbery trial in 1996. When he was later asked how many times he was brought back to the Superior Court building after his 1996 trial, he stated: "I can't recall the days, exact days and months." After being confronted with the problems in the timeline about which he was testifying, he added: "I was back in this court in '98. I overturned my case. In 1998 there is a possible chance I was here on appeal for conflict of interest."

## C

### The Testimony of the Attorney Who Represented Mr. Perry at his Second Murder Trial

The attorney testified that he remembered that he had represented Mr. Perry. However, he further stated that he did not have a recollection of any conversation taking place between Mr. Perry and himself, either before or during the second murder trial, with respect to any concerns about the justice assigned to preside over that trial; but he added that he "certainly d[id]n't have a recollection of every conversation [he] had with Mr. Perry." He reiterated that he had no recollection of the issue of the trial justice's potential prejudice having been raised but could not "definitively" say that "nothing happened."

The attorney then testified with respect to how he would have proceeded if Mr. Perry had indicated a concern about the trial justice's impartiality. He stated that the first thing he would

have done would be to discuss that concern with the client and explain the advantages and disadvantages of raising it with the justice. He testified that how he would want to proceed might depend on the justice who had been assigned to preside over the trial. He stated that the justice assigned to preside over Mr. Perry's second murder trial was "great;" he added that that justice was a "good judge for a homicide trial." The attorney then reiterated in his testimony that he had no recollection of having discussed the issue of any possible prejudice with the trial justice at Mr. Perry's second murder trial. When asked if he would have raised such an issue with a trial justice if his client insisted that he do so, he stated:

> "I would probably do it though I probably would theoretically take the position that it's a tactical decision that a lawyer has the right to make. Probably if the client insisted I bring it to the judge's attention I would probably in a homicide case defer to the client and bring it to the judge's attention. If I thought it was unwise I would do that only after a lot of conversation with the client * * *."

There were no further witnesses at the hearing. Following the submission of supplemental memoranda, the hearing justice ultimately issued a written decision on July 7, 2010, denying Mr. Perry's application for postconviction relief.

## D

### The Postconviction Relief Decision

In his written decision denying the application for postconviction relief, the hearing justice began by noting that Mr. Perry did not dispute that he committed the homicide that was the basis of his first-degree murder conviction in his criminal case. The hearing justice then proceeded to make findings of fact. He found that the justice who presided over Mr. Perry's second trial had, in fact, represented Mr. Perry while that justice was in private practice. However, he found that no connection with Mr. Perry was ever brought to the attention of the

- 6 -

justice presiding over the second murder trial, and he further specifically found that there was no evidence that that justice acted with any "prejudice, malice, or predisposition against Mr. Perry."

The hearing justice further found that Mr. Perry "did not ask his attorney to tell the [trial justice] of [any] alleged conflict." The hearing justice stated that the testimony of Mr. Perry and Mr. Gatone as to that point was "neither convincing nor credible." In the hearing justice's judgment, Mr. Gatone's "demeanor, coupled with his contradiction of the dates of the alleged conversation * * * severely impinge upon his credibility." Additionally, the hearing justice characterized Mr. Perry's testimony as "self-serving." In contrast, the hearing justice found the testimony of the attorney who represented Mr. Perry at the second murder trial to be "highly credible." He noted that the attorney did not remember having any conversation about a "conflict" between Mr. Perry and the trial justice during the course of Mr. Perry's second murder trial.

As it pertained to the merits of Mr. Perry's application, the hearing justice found that Mr. Perry had failed to carry his burden of demonstrating ineffective assistance of counsel since there was no credible evidence that Mr. Perry ever told his attorney about his history with the justice presiding over the second murder trial. He further stated that the law in Rhode Island does not require a trial justice to recuse <u>sua</u> <u>sponte</u> under the particular circumstances of this case where there was no evidence that the justice who presided over the second murder trial even knew that he had represented Mr. Perry many years earlier while he was in private practice. The hearing justice added that it is customary for the party concerned about possible prejudice to raise that issue in a motion, which Mr. Perry did not do.[4]

---

[4] It is worth noting that the hearing justice added that the recusal issue was not in Mr. Perry's original application for postconviction relief but was only asserted when he later amended that application, many years after his conviction.

A final judgment dismissing the application for postconviction relief was entered on January 5, 2012. Mr. Perry appealed the denial of his application for postconviction relief to this Court.

## II

## Issues on Appeal

Mr. Perry contends on appeal that the justice who passed on his application for postconviction relief erred in denying his application for the following reasons: (1) the justice who presided over Mr. Perry's second murder trial should have recused; (2) Mr. Perry received ineffective assistance of counsel at the second murder trial because counsel did not request that the justice recuse; and (3) the hearing justice who passed on his application for postconviction relief failed to consider Mr. Perry's contention that his counsel at his second murder trial was also ineffective due to the fact that he did not introduce evidence to support a diminished capacity defense and he refused to allow Mr. Perry to testify on his own behalf.

## III

## Standard of Review

Postconviction relief, under G.L. 1956 § 10-9.1-1, is "available to any person who has been convicted of a crime and who thereafter alleges * * * that the conviction violated the applicant's constitutional rights * * *." Merida v. State, 93 A.3d 545, 548 (R.I. 2014) (internal quotation marks omitted). It should be borne in mind, however, that an applicant for postconviction relief "bears the burden of proving, by a preponderance of the evidence," that he is entitled to relief. Brown v. State, 964 A.2d 516, 526 (R.I. 2009) (internal quotation marks omitted); see also Chalk v. State, 949 A.2d 395, 398 (R.I. 2008).

When this Court reviews a hearing justice's decision in a postconviction relief case, we accord "great deference to the factual determinations of the Superior Court hearing justice." Merida, 93 A.3d at 548 (internal quotation marks omitted); see also Neufville v. State, 13 A.3d 607, 610 (R.I. 2011). Accordingly, we will not disturb findings of the hearing justice "absent clear error or a determination that the hearing justice misconceived or overlooked material evidence." Merida, 93 A.3d at 549 (quoting Rodrigues v. State, 985 A.2d 311, 313 (R.I. 2009)); see also State v. Thomas, 794 A.2d 990, 993 (R.I. 2002). But when the application raises issues of fact or mixed issues of law and fact relating to an applicant's constitutional rights, "we review those issues de novo." Merida, 93 A.3d at 549 (quoting Neufville, 13 A.3d at 610); see also Thornton v. State, 948 A.2d 312, 316 (R.I. 2008). At the same time, however, it is well established that "[f]indings of historical fact, and inferences drawn from those facts, will still be accorded great deference by this Court, even when a de novo standard is applied to the issues of constitutional dimension." Merida, 93 A.3d at 549 (quoting Hazard v. State, 968 A.2d 886, 891 (R.I. 2009)); see also Gonder v. State, 935 A.2d 82, 85 (R.I. 2007).

**IV**

**Analysis**

**A**

**Recusal**

Mr. Perry contends that the justice who presided over his second murder trial should have recused due to the fact that he had previously served as Mr. Perry's attorney when Mr. Perry was a juvenile; it is Mr. Perry's position that, due to the trial justice's failure to recuse, he did not receive a fair and impartial trial as guaranteed to him by the Sixth Amendment to the United States Constitution.

We have stated that "[t]he customary manner in which one raises the issue of prejudice is by appropriate motion at trial, by a motion for a mistrial, or by a motion for disqualification of the justice presiding." State v. D'Amario, 568 A.2d 1383, 1385 (R.I. 1990); see State v. Nidever, 120 R.I. 767, 769, 390 A.2d 368, 369-70 (1978); see also State v. Buckley, 104 R.I. 317, 322, 244 A.2d 254, 257 (1968). Mr. Perry concedes that no such motion was filed during his second murder trial. Despite that fact, Mr. Perry seeks to have this Court declare that the trial justice should have recused sua sponte. We are unable to make such a declaration in this case.

In his filings before this Court, Mr. Perry expressly admits that "there is no clear obligation in Rhode Island to recuse sua sponte without * * * a motion." Rather, he posits that there is an "implied duty" for a trial justice to recuse. He provides no precedent that supports that contention nor could we unearth any in the course of an extensive review of our precedent on the subject. The only case that Mr. Perry cites which is even arguably close to being somewhat on point is State v. Tucker, 625 A.2d 34, 36 (N.J. Super. Ct. App. Div. 1993), which opinion specifically states that "defense counsel informed the judge that in 1987 the judge, while still an assistant prosecutor * * *, presented two cases which involved the defendant before the grand jury." (Emphasis added.) The opinion in Tucker is obviously distinguishable from the instant case. In this case, the evidence elicited at the postconviction relief hearing established that any potential prejudice stemming from the trial justice's previous representation of Mr. Perry was not made known to the trial justice at any point during the second murder trial. Additionally, the hearing justice noted, in his July 7, 2010 written decision, that Mr. Perry did not even "suggest" during his postconviction relief case that the trial justice who presided over his second murder trial even "remembered" him. Thus, it is apparent to this Court that there is an utter lack of any evidence that the trial justice in question was even aware of his history with

Mr. Perry or any potential prejudice therefrom. Accordingly, we are unable to perceive any error in the hearing justice's denial of Mr. Perry's application for postconviction relief on the grounds that the trial justice at Mr. Perry's second murder trial should have recused.

**B**

**Ineffective Assistance of Counsel**

This Court reviews an allegation of ineffective assistance of counsel under the criteria set forth by the United States Supreme Court in its opinion in Strickland v. Washington, 466 U.S. 668 (1984). Merida, 93 A.3d at 549; see also Neufville, 13 A.3d at 610. Initially, "the applicant must establish that counsel's performance was constitutionally deficient; '[t]his requires [a] showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed * * * by the Sixth Amendment.'" Linde v. State, 78 A.3d 738, 745 (R.I. 2013) (quoting Bido v. State, 56 A.3d 104, 110-11 (R.I. 2012)). In making that determination, we conduct a "highly deferential" review, and we afford counsel a "strong presumption that [his or her] conduct falls within the permissible range of assistance." Merida, 93 A.3d at 549 (internal quotation marks omitted). Only if the assistance of counsel is deemed to have been constitutionally deficient will this Court proceed to the second prong of the analysis. Id.; see also Hazard, 968 A.2d at 892. Pursuant to the second prong, an applicant for postconviction relief "must show that the 'deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial.'" Linde, 78 A.3d at 745-46 (quoting Guerrero v. State, 47 A.3d 289, 300-01 (R.I. 2012)).

**1. Raising the Recusal Issue**

Mr. Perry's first argument in support of his thesis that his trial counsel at his second murder trial was ineffective is based on the fact that said counsel did not request that the justice

presiding over the second trial recuse after Mr. Perry allegedly told counsel that the trial justice had previously represented him when in private practice. Mr. Perry also avers that his counsel should have "taken reasonable steps to investigate the backgrounds of Mr. Perry and [the trial justice]."

Initially, we note that the hearing justice found as a fact that Mr. Perry did not ask his attorney for his second murder trial to inform the trial justice that he had previously represented Mr. Perry and that there was no credible evidence that Mr. Perry ever even told his attorney about his history with the trial justice. The hearing justice made those determinations based on his finding that neither Mr. Perry's testimony nor Mr. Gatone's testimony was convincing or credible, due to the inconsistencies in Mr. Gatone's testimony and the self-serving nature of Mr. Perry's testimony. By contrast, the hearing justice did find the testimony of Mr. Perry's attorney at his second murder trial to be highly credible when the attorney testified that he did not remember having any conversation with Mr. Perry regarding any potential prejudice on the part of the trial justice. Upon our review of the record, we can find no evidence to suggest that the hearing justice's credibility determinations were not well founded. Accordingly, we are firmly in agreement with the hearing justice's conclusion that Mr. Perry's counsel could not possibly have been ineffective in failing to raise the recusal issue if he was never aware that a connection existed between his client and the trial justice.

Mr. Perry makes a further allegation on appeal that his attorney should have investigated the backgrounds of Mr. Perry and the trial justice to determine if there was a connection between them that might have caused the justice to be prejudiced against him. In our opinion, that contention merits only a brief response: such a requirement, for which no authority has been cited, would be infeasible and unduly burdensome on the attorney. For that reason, an attorney's

failure to conduct such an investigation certainly would not be an error so serious as to amount to a denial of the effective assistance of counsel under the Sixth Amendment. See Linde, 78 A.3d at 745.

Accordingly, we necessarily conclude that the hearing justice did not err when he determined that Mr. Perry's counsel was not ineffective for failure to raise the recusal issue before the trial justice at Mr. Perry's second murder trial.

### 2. Failure to Introduce Evidence of Diminished Capacity and Not Allowing Mr. Perry to Testify

Mr. Perry's final argument on appeal is that the hearing justice erred in failing to address his contentions that his counsel for his second murder trial was ineffective due to the fact that he did not present evidence relative to a diminished capacity defense and did not allow Mr. Perry to testify in his own defense.

We have repeatedly stated that on an application for postconviction relief "the burden of proof resides with the applicant, who must establish 'by a preponderance of the evidence, that such relief is warranted.'" Lyons v. State, 43 A.3d 62, 65 (R.I. 2012) (quoting DeCiantis v. State, 24 A.3d 557, 569 (R.I. 2011)); see Brown v. State, 32 A.3d 901, 907 (R.I. 2011); State v. Laurence, 18 A.3d 512, 521 (R.I. 2011); see also Brown, 964 A.2d at 526; Chalk, 949 A.2d at 398.

We acknowledge that, in his application for postconviction relief, Mr. Perry did allege ineffective assistance of counsel with respect to: (1) the lack of evidence of diminished capacity at his second murder trial; and (2) his not having been allowed to testify in his own defense at his second murder trial. However, that is the extent of Mr. Perry's efforts with regard to those two contentions. He did not present any evidence with respect to those contentions at the hearing on

his application for postconviction relief. In fact, not only did he not provide evidence, he did not even raise or discuss either of those contentions before the hearing justice. We specifically note that Mr. Perry had the opportunity to question his attorney for his second murder trial with respect to the diminished capacity defense and the issue of Mr. Perry testifying in his own defense, but he did not avail himself of that opportunity. Accordingly, we are led to the ineluctable conclusion that Mr. Perry did not sustain his burden of proof as it relates to his claim of ineffective assistance of counsel with respect to those two issues. As such, in our judgment, the hearing justice did not err in failing to address those contentions in his decision on Mr. Perry's application for postconviction relief.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court denying Mr. Perry's application for postconviction relief. We remand the record to that tribunal.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

---

**TITLE OF CASE:**        Joseph Perry v. State of Rhode Island.

**CASE NO:**        No. 2012-49-Appeal.
                    (PM 02-1591)

**COURT:**        Supreme Court

**DATE OPINION FILED:**  February 18, 2016

**JUSTICES:**        Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**        Associate Justice William P. Robinson III

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

            Associate Justice Jeffrey A. Lanphear

**ATTORNEYS ON APPEAL:**

            For Plaintiff:   George J. West, Esq.

            For State:  Jane M. McSoley
                        Department of Attorney General